**Nos. 15-2440 and 15-2682**

# In the
# United States Court of Appeals
## for the Seventh Circuit

LIGHTSPEED MEDIA CORPORATION,

*Plaintiff,*

v.

ANTHONY SMITH, et al.,

*Defendants-Appellees.*

APPEALS OF: PAUL HANSMEIER and JOHN L. STEELE,

_____

Appeal from the United States District Court
for the Southern District of Illinois, No. 3:12-cv-00889-DRH-SCW.
The Honorable **David R. Herndon**, Judge Presiding.

## BRIEF OF DEFENDANT-APPELLEE
## ANTHONY SMITH

DAN BOOTH
JASON SWEET
BOOTH SWEET LLP
32R Essex Street
Sudio 1A
Cambridge, Massachusetts 02139
(617) 250-8602

*Attorneys for Defendant-Appellee
Anthony Smith*

## ORAL ARGUMENT REQUESTED

 

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 15-2440, 15-2682

Short Caption: Lightspeed Media Corporation v. Anthony Smith, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Anthony Smith

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Booth Sweet LLP

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

Attorney's Signature: s/ Dan Booth     Date: 11/23/2015

Attorney's Printed Name: Dan Booth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ⊗   **No** ◯

Address: 32R Essex Street

Cambridge, MA 02139

Phone Number: 617-250-8602     Fax Number: 617-250-8883

E-Mail Address: dbooth@boothsweet.com

rev. 01/15 GA

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 15-2440, 15-2682

Short Caption: Lightspeed Media Corporation v. Anthony Smith, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> **[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Anthony Smith

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Booth Sweet LLP

(3) If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

Attorney's Signature: s/ Jason E. Sweet     Date: 11/24/2015

Attorney's Printed Name: Jason E. Sweet

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** _____   **No** ☒

Address: 32R Essex Street

Cambridge, MA 0239

Phone Number: 617-250-8619     Fax Number: 617-250-8883

E Mail Address: jsweet@boothsweet.com

rev. 01/15 GA

Save Form As      Clear Form

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS  ........................................... i

TABLE OF AUTHORITIES  .............................................. v

JURISDICTIONAL STATEMENT .................................. 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW  ......................................... 2

STATEMENT OF THE CASE  ................................................  2

SUMMARY OF THE ARGUMENT  .................................................. 7

ARGUMENT ......................................................... 8

I.      Standard of Review  ............................................... 8

II.     The district court did not abuse its discretion or err in finding Hansmeier
        and Steele had engaged in civil contempt................................. 8

        A.      Hansmeier and Steele violated a clear order of the court ........................... 9

        B.      The district court properly found Hansmeier and Steele had
                contemptuously misstated their ability to pay the sanctions................... 10

                1.      The sanctions were anticipated by the November 13, 2013
                        hearing or, at latest, November 22, 2013 ....................... 10

                2.      Hansmeier had more than enough in the Monyet, LLC
                        Scottrade account to pay the sanctions before he drained
                        it ..................................................... 11

                3.      Steele had more than enough in his Sabadell account to pay
                        the sanctions but diverted it to home renovations.......................... 13

                4.      The district court properly measured the issue of contempt
                        from the time the amount of sanctions was clear ........................... 14

        C.      The attorneys fail to identify any material error in the district
                court's analysis of their contempt................................. 16

                1.      It is immaterial whether Hansmeier was a member of
                        Monyet because he had undisputed access to its funds................. 16

                2.      It is immaterial that Steele deposited his funds into a
                        tenancy by the entirety with his wife ............................... 17

3.      It is frivolous to argue that the district court "failed to apply basic arithmetic" by counting Hansmeier's funds before their depletion ................................................................. 20

4.      Though Hansmeier and Steele lied to the district court, they were properly found in contempt for dissembling, not lying ................. 20

D.     The district court properly entered remedial, compensatory sanctions to redress Hansmeier and Steele's civil contempt ..................................... 22

1.      District courts have broad discretion to remedy civil contempt ..... 23

2.      The district court awarded compensatory civil contempt sanctions ......................................................... 24

3.      The court properly set the amount of contempt sanctions ............ 26

III.    The district court did not abuse its discretion or err in finding Steele obstructed discovery ........................................................ 28

A.     The record supported discovery sanctions ................................. 28

B.     The district court fully explained the grounds for discovery sanctions ........................................................ 30

C.     The district court imposed sanctions commensurate with the additional costs Smith incurred in third-party discovery ................................................................. 30

IV.    The district court rightly reconsidered Smith's motions ..................................... 33

A.     Evidence on the record supported reconsideration ................................. 34

B.     Newly discovered evidence supported reconsideration ............................ 36

CONCLUSION ................................................................................. 40

CERTIFICATE OF COMPLIANCE ........................................................ 41

CERTIFICATE OF SERVICE .............................................................. 42

# TABLE OF AUTHORITIES

## Cases

*Ahmed v. Ashcroft*, 388 F.3d 247 (7th Cir. 2004) ...................................................... 34, 35

*Amax Coal Co. v. Franklin*, 957 F.2d 355 (7th Cir. 1992) ................................................ 40

*American Fletcher Mortgage Co. v. Bass*, 688 F.2d 513 (7th Cir. 1982) ................... 9, 20

*Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737 (7th Cir. 2007) ... 23

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990) ....... 34

*Beck v. Test Masters Educ. Servs.*, 289 F.R.D. 374 (D.D.C. 2013) .................................. 14

*Blakes v. Foutch*, 600 Fed. App'x 1004 (7th Cir. 2015) .................................................... 14

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264 (7th Cir. 1996) .. 36

*Central States, Southeast & Southwest Areas Health & Welfare Fund v. Lewis*,
745 F.3d 283 (7th Cir. 2014) .............................................................................................15

*Champeau v. Freuhauf Corp.*, 814 F.2d 1271 (8th Cir. 1987) .......................................... 35

*Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing*, 207 F.3d 500
(8th Cir. 2000) ....................................................................................................................21

*Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939 (7th Cir. 2013) .............................. 33, 38

*Clark v. Runyon*, 116 F.3d 275 (7th Cir. 1997) ................................................................. 29

*Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952 (7th Cir. 2006) ................................. 25

*Connolly v. J.T. Ventures & John Lange*, 851 F.2d 930 (7th Cir. 1988) ............... 23, 24, 27

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) .....................................................1

*De Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578 (7th Cir. 2008) ...... 2

*Deicher v. City of Evansville*, 545 F.3d 537 (7th Cir. 2008) ............................................ 25

*Divane v. Krull Electric Co.*, 319 F.3d 307 (7th Cir. 2003) ....................................... 18, 35

*Domanus v. Lewicki*, 742 F.3d 290 (7th Cir. 2014) .......................................................... 27

*Dority v. City of Chicago*, 50 Fed. App'x 760 (7th Cir. 2002) ......................................... 34

*Dow Chem. Co. v. Chem Cleaning, Inc.*, 434 F.2d 1212 (5th Cir. 1970) ......................... 26

*Dunn v. Gull*, 990 F.2d 348 (7th Cir. 1993) ............................................................1

*E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637 (7th Cir. 2011) .......................... 32

*Ex parte Hudgings*, 249 U.S. 378 (1919) ........................................................... 25

*First Nat'l Bank v. Hector Supply Co.*, 254 So. 2d 777 (Fla. 1971).............................18, 19

*Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245 (7th Cir. 1995) .................................. 26

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999) ................................... 15, 17

*FTC v. Trudeau*, 579 F.3d 754 (7th Cir. 2009) ....................................................21, 24, 25

*Greviskes v. Universities Research Ass'n*, 417 F.3d 752 (7th Cir. 2005) .......................... 8

*Grosvenor v. Brienen*, 801 F.2d 944 (7th Cir. 1986)....................................................... 35

*Guava, LLC v. Merkel*, No. 27-CV-12-20976 (Minn. Dist. Ct.)...................4, 11, 12, 37, 38

*Hansmeier v. Merkel (In re Guava LLC)*, No. A15-0254, 2015 Minn. App. Unpub. LEXIS 826 (Minn. App. Ct. Aug. 17, 2015) .........................................................13

*Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986) .................................. 30

*Hicks on behalf of Feiock v. Feiock*, 485 U.S. 624 (1988)................................................ 23

*Hinds v. Enhanced Bus. Reporting Consortium, Inc.*, 433 Fed. App'x 463 (7th Cir. 2011) ..............................................................................................40

*Hodgson v. Hotard*, 436 F.2d 1110 (5th Cir. 1971) ...................................................... 19

*Howard Johnson Co. v. Khimani*, 892 F.2d 1512 (11th Cir. 1990) ........................... 26, 27

*Hutto v. Finney*, 437 U.S. 678 (1978) ............................................................... 23

*In re Cerna*, 20 I. & N. Dec. 399 (BIA 1991) ...................................................... 34

*In re Cook*, 49 F.3d 263 (7th Cir. 1995) ............................................................. 14

*In re Generes*, 69 F.3d 821 (7th Cir. 1995) ........................................................ 40

*In re Grand Jury Proceedings*, 894 F.2d 881 (7th Cir. 1989) ......................................... 23

*In re Hansmeier*, Bankr. No. 15-42460 (KHS) (Bankr. D. Minn. 2015) .......... 6, 12, 16, 17

*In re Lawrence*, 279 F.3d 1294 (11th Cir. 2002) ........................................ 14, 15

*In re Michael*, 326 U.S. 224 (1945) ................................................................ 25

*In re Nora*, 778 F.3d 662 (7th Cir. 2015) ...................................................... 27

*In re Petition for Disciplinary Action Against Paul Hansmeier*,
File No. A15-1855 (Min. Sup. Ct. filed Oct. 28, 2015)........................................ 6

*In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991) ................................. 14

*In re Prince*, 85 F.3d 314 (7th Cir. 1996) ...................................................... 37

*In re Steele*, Comm'n No. 2015PR00068 (Ill. Att'y Regis. & Disc.
Comm'n Hr'g Bd. filed Aug. 20, 2015) ................................................................ 6

*In re Taylor*, 793 F.3d 814 (7th Cir. 2015) ...................................................... 8

*In re Walters*, 176 B.R. 835 (Bankr. N.D. Ind. 1994) ...................................... 21

*In re Vaughn*, 765 F.3d 1174 (10th Cir. 2014) ................................................ 15

*Jones v. Lincoln Electric Co.*, 188 F.3d 709 (7th Cir. 1999) ........................... 25

*Klingman v. Levinson*, 877 F.2d 1357 (7th Cir. 1989) .................................... 30

*LeBeau v. Taco Bell*, 892 F.2d 605 (7th Cir. 1989) ......................................... 30

*Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448 (1932) ................... 23

*Lightspeed Media Corp. v. Smith*, 761 F.3d 699
(7th Cir. 2014) ............................................................ 1, 8, 16, 23, 24, 26, 27, 32

*Long v. McDermott*, 200 Fed. App'x 595 (7th Cir. 2006).................................21

*Long v. Steepro*, 213 F.3d 983 (7th Cir. 2000) .............................................. 32

*Loubriel v. United States*, 9 F.2d 807 (2d Cir. 1926) ...................................... 2

*Manhattan Indus. Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1 (2d Cir. 1989) ........ 24

*Marlowe v. Bottarelli*, No. 89 C 1789, 1989 U.S. Dist. LEXIS 12077 (N.D. Ill. Oct. 6,
1989) ............................................................................................................. 35

*Marlowe v. Bottarelli*, 938 F.2d 807 (7th Cir. 1991)....................................... 35

*Masco Corp. v. Prostyakov*, 593 Fed. App'x 570 (7th Cir. 2015)..................... 23

*Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193 (7th Cir. 1996) .........................................31

*McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) .................................................. 23

*Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805 (7th Cir. 2012) ........................................... 8

*Newlin v. Helman*, 123 F. 3d 429 (7th Cir. 1997) ........................................................... 16

*NLRB v. HH3 Trucking*, No. 05-1362, 2012 U.S. App. LEXIS 26889 (7th Cir. Aug 30, 2012) ..................................................................................................................... 9, 10

*Pearle Vision, Inc. v. Romm*, 541 F.3d 751 (7th Cir. 2008)............................................... 21

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533 (7th Cir. 1995) ................... 8

*Reich v. Sea Sprite Boat Co.*, 50 F.3d 413 (7th Cir. 1995) ................................................ 14

*Rojas v. Town of Cicero*, 775 F.3d 906 (7th Cir. 2015) .................................................. 27

*Rumsavich v. Borislow*, 154 F.3d 700 (7th Cir. 1998) ..................................................... 29

*SEC v. Bilzerian*, 112 F. Supp. 2d 12 (D.D.C. 2000) ............................................ 18, 19, 20

*SEC v. Bilzerian*, 75 Fed. App'x 3 (D.C. Cir. 2003) ......................................................... 18

*SEC v. First Choice Mgmt. Servs.*, 709 F.3d 685 (7th Cir. 2013) ............................. 23, 27

*SEC v. Hyatt*, 621 F.3d 687 (7th Cir. 2010) ...................................................................... 26

*SEC v. Solow*, 682 F. Supp. 2d 1312 (S.D. Fla. Jan. 14, 2010) ..............................18, 19, 20

*SEC v. Solow*, 682 F. Supp. 2d 1312 (S.D. Fla. Jan. 22, 2010) ........................................ 19

*SEC v. Solow*, 396 Fed. App'x 634 (11th Cir. 2010) ......................................................... 18

*SEC v. Solow*, 396 Fed. App'x 635 (11th Cir. 2010) ......................................................... 19

*Societe Internationale v. Rogers*, 357 U.S. 197 (1958) ................................................... 32

*Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394 (7th Cir. 2012) ........................................ 34

*Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41 (1st Cir. 2006) ......................... 30

*Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469 (7th Cir. 1984) ....................... 33

*Teledyne Techs., Inc. v. Shekar*, No. 15-cv-1392, 2015 U.S. Dist. LEXIS 78224 (N.D. Ill. June 17, 2015) ................................................................................................................... 10

*Trecker v. Scag*, 747 F.2d 1176 (7th Cir. 1984) ................................................................ 32

*United States v. Asay*, 614 F.2d 655 (9th Cir. 1980) ........................................................ 14

*United States v. Bryan*, 339 U.S. 323 (1950) ................................................................... 2

*United States v. Gelline*, 182 F.3d 578 (7th Cir. 1999) ................................................... 15

*United States v. Griffin*, 84 F.3d 820 (7th Cir. 1996) ...................................................... 21

*United States v. Henderson*, 185 F.2d 189 (7th Cir. 1950) ............................................... 25

*United States v. Kennedy*, 201 F.3d 1324 (11th Cir. 2000) .............................................. 18

*United States v. Lay*, 779 F.2d 319 (6th Cir. 1995) ......................................................... 14

*United States v. Ligas*, 549 F.3d 497 (7th Cir. 2008) ...................................................... 34

*United States v. One Single Family Residence*, 894 F.2d 1511 (11th Cir. 1990) ............. 23

*United States v. Schmude*, 901 F.2d 555 (7th Cir. 1990) ................................................ 27

*United States v. Seetapun*, 750 F.2d 601 (7th Cir. 1984) ................................................ 14

*United States v. United Mine Workers of Am.*, 330 U.S. 258 (1946) .............................. 24

*United States v. Williams*, 901 F.2d 1394 (7th Cir. 1990) .............................................. 27

*United States ex rel. McCandliss v. Sekendur*, No. 03 C 807, 2014 U.S. Dist. LEXIS 37001 (N.D. Ill. Jan. 27, 2014) ......................................................................................... 21

*United States ex rel. SBA v. Torres*, 142 F.3d 962 (7th Cir. 1998) ................................. 21

*United States ex rel. Thom v. Jenkins*, 760 F.2d 736 (7th Cir. 1985) ............................. 19

*Wilson v. Sargent*, 313 F.3d 1315 (11th Cir. 2002) ........................................................ 15

## Rules, Statutes and Other Authorities

18 U.S.C. § 1030 ................................................................................................ 1

28 U.S.C. § 1291 ................................................................................................ 1

28 U.S.C. § 1331 ................................................................................................ 1

28 U.S.C. § 1367(a) ........................................................................................... 1

28 U.S.C. § 1927 ............................................................................... 1, 2, 10, 31

Fla. Stat. § 689.11(3) ...................................................................................... 19

Fed. R. App. P. 10(e)(2) ................................................................................. 30

Fed. R. Civ. P. 37.......................................................................................... 2, 33

Fed. R. Civ. P. 37(b) .................................................................................. 14, 32

Fed. R. Civ. P. 37(b)(2), adv. comm. note (1970 amendments) .................... 32

Fed. R. Civ. P. 59(a) ........................................................................................ 35

Fed. R. Civ. P. 59(d) ........................................................................................ 35

Fed. R. Civ. P. 59(e) .................................................................. 2, 8, 34, 35, 36, 37

Fed. R. Civ. P. 60(a) ........................................................................................ 30

Megan Geuss, *Prenda-linked copyright trolling lawyer Paul Duffy Dead at age 55*, Ars Technica (Aug. 14, 2015) ............................................................................... 6

Roy Strom, *Lawyers in sanctions backfire have history*, Chi. Daily L. Bull. (Nov. 23, 2015) .................................................................................................12

Claire Suddath, *Prenda Law, the Porn Copyright Trolls*, BusinessWeek (May 30, 2013) ................................................................................................ 17

## JURISDICTIONAL STATEMENT

Appellants' jurisdictional statement is not complete and correct.

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because the complaint alleged violations of 18 U.S.C. § 1030 and supplemental jurisdiction over the plaintiff's state-law claims, which were all part of the same case or controversy, under 28 U.S.C. § 1367(a). Plaintiff voluntarily dismissed all claims without prejudice. AA3.[1] The district court had retained jurisdiction to consider sanctions. *Dunn v. Gull*, 990 F.2d 348, 350 (7th Cir. 1993) (*citing Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990)). It sanctioned plaintiff's attorneys Paul Hansmeier, John Steele, and Paul Duffy under 28 U.S.C. § 1927. SR2. It then ordered additional sanctions and held the attorneys in civil contempt for failing to pay the earlier sanctions award. AA8. The attorneys appealed both sanctions orders. Nos. 13-3801 & 14-1682. This Court affirmed. *Lightspeed Media Corp. v. Smith*, 761 F.3d 699 (7th Cir. 2014) ("*Lightspeed I*").

Two of the attorneys are appealing later sanctions. Hansmeier appeals from a June 5, 2015 order that again held him and Steele in civil contempt, imposing sanctions for their contemptuous statements in court, and also finding Steele and Duffy willfully obstructed discovery. Hansmeier filed his notice of appeal July 6, 2015. AA1. Steele appeals from a July 23, 2015 order setting the amount of the discovery sanctions. Steele filed his notice of appeal August 7, 2015. AA2.

This Court has jurisdiction under 28 U.S.C. § 1291 because an order imposing specific sanctions on plaintiff's counsel, after a case is dismissed without prejudice, is

---

[1] Citations to "AA" (Appellants' separate appendix), "Br." (Appellants' brief), "SA" (short appendix), and "SR" (short record) are to filings in No. 15-2440 unless otherwise specified (e.g., "No. 15-2682 SR"). Citations to "Doc." are to docket entries in the district court unless otherwise specified.

1

final for purposes of appeal. *De Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 583-84 (7th Cir. 2008).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether it was within the district court's discretion, and not clearly erroneous, to:

1.    find Hansmeier and Steele in contempt for making misleading and incomplete financial statements in support of their inability-to-pay defense;

2.    find Steele obstructed discovery about his finances in bad faith; and

3.    reconsider its order denying Smith's contempt and discovery sanctions motions under Fed. R. Civ. P. 59(e).

Stated more broadly:

> The question is no less than whether courts must put up with shifts and subterfuges in the place of truth and are powerless to put an end to trifling. They would prove themselves incapable of dealing with actualities if it were so, for there is no surer sign of a feeble and fumbling law than timidity in penetrating the form to the substance.

*United States v. Bryan*, 339 U.S. 323, 334-35 (1950) (*quoting Loubriel v. United States*, 9 F.2d 807, 808 (2d Cir. 1926) (Learned Hand, J.)).

## STATEMENT OF THE CASE

John Steele and Paul Hansmeier, two of plaintiff's attorneys, appeal orders awarding defendant Anthony Smith monetary sanctions for their civil contempt and, under Fed. R. Civ. P. 37 and 28 U.S.C. § 1927, for Steele's obstruction of discovery.

These are the third and fourth appeals arising from the district court's November 27, 2013 order imposing $261,025.11 in sanctions jointly and severally against plaintiff's attorneys Steele, Hansmeier, and Duffy under 28 U.S.C. § 1927 for conducting vexatious litigation. SR2. The defendants Comcast, AT&T, and appellee Smith moved for a finding of contempt after the attorneys did not timely pay those sanctions. Doc. 107. The district

court scheduled a show-cause hearing. Doc. 112. Hansmeier and Steele argued the sanctions "would impose a crippling financial liability" on them. AA138, Doc. 115 p. 3.

To ascertain the veracity of their claimed inability to pay, Smith issued third-party subpoenas to twelve of the attorneys' banks and other financial institutions on January 16, 2014. Doc. 116-1 pp. 9-20. He also served the attorneys interrogatories and requests for production; they never complied, denying receipt. Doc. 135-22, 135-24; AA31; November 12, 2014 hearing transcript ("Hr'g Tr.")[2] 11:12-17 & 32:23-33:1. On January 30, 2014 the attorneys moved to quash the subpoenas, Doc. 116, and Steele faxed the motion to JPMorgan. Doc. 189 p. 4, 193-3 p. 4. JPMorgan asked Duffy for a court-stamped copy on February 3, 2014. *Id.* The motion to quash was denied on February 19, 2014. Doc. 125. When JPMorgan again asked Duffy to send the motion on March 3, 2014, he did so without disclosing that it had been denied. Doc. 189 p. 4, 193-3 pp. 4-5.

At the February 13, 2014 show-cause hearing, the attorneys each claimed they could not pay. Doc. 127 pp. 8:10-21, 10:9-16, 19:10-15, 20:10-21:9. At the hearing's conclusion, the district court ordered them to submit CPA-prepared financial statements documenting their averred inability so the contempt motion could be decided. *Id.* pp. 37:18-38:5 & 39:1-5. The attorneys submitted financial statements *in camera*. AA14.

On March 20, 2014, while the contempt motion was pending, Smith filed a renewed motion for contempt based on the attorneys' financial statements and other representations in and to the court, and noting Duffy's interference with discovery from JPMorgan. Doc. 135 p. 9; AA20. The district court found the attorneys in contempt on March 24, 2014 and ordered them to pay defendants another $26,102.58, representing

---

[2] This November 12, 2014 show-cause hearing transcript ("Hr'g Tr."), made available to the parties on September 25, 2015, was not yet publicly available through PACER at the time Smith filed this brief. Citations to the transcript are to the version produced by the court reporter.

10% of the original sanctions award. AA8-20. Smith issued eight new third-party subpoenas on March 24, 2014, having voluntarily withdrawn earlier subpoenas to those third parties when the attorneys objected. Doc. 157-1 pp. 7-8, SR33-34 & 36. On April 4, 2014 the district court stayed the contempt order pending appeal. Doc. 148.

On April 11, 2014, Steele informed Smith's counsel that he had contacted the subpoenaed third parties to notify them "the action has been stayed and any outstanding subpoenas must be withdrawn." Doc. 153-1. The action had not been stayed; the Court order staying the contempt sanctions did not pertain to the subpoenas. SA14. Yet on April 16, 2014 Steele faxed a copy of the April 4, 2014 stay order to Sabadell United Bank, stating "the order I have included shows that the Court stayed the matter on April 4, 2014." Doc. 158, AA148. Smith moved to sanction Duffy and Steele for obstructing discovery on April 18, 2014. Doc. 153.

Hansmeier moved to quash Smith's second wave of subpoenas on April 21, 2014. Doc. 157 p. 2. The subpoenaed third parties, including Sabadell, withheld production while the motion to quash was pending. *See* Doc. 161 p. 1 n.1; 193 p. 5 & n.6. On June 30 and July 2, 2014, Hansmeier testified in Minneapolis about his assets in a debtor's examination in *Guava, LLC v. Merkel*, No. 27-CV-12-20976 (Minn. Dist. Ct.). Doc. 190-3, 190-4. Smith was not a party to *Guava*.

This Court affirmed the original sanctions and contempt orders against the attorneys on July 31, 2014. *Lightspeed I.* The district court denied Hansmeier's motion to quash on October 20, 2014, six months after it was filed, concluding Hansmeier had not stated any valid reason for quashing the subpoenas. SR32-37.

On November 12, 2014 the district court held a motion hearing on Smith's motions for renewed contempt and discovery sanctions. AA21; Hr'g Tr. Smith received Sabadell's

4

response to his March 2014 subpoena regarding Steele's finances on November 17, 2014. AA35, AA42, Doc. 193 p. 5 n.6. The district court denied Smith's motions the next day, November 18, 2014, before he could present Sabadell's production for review. AA22-31.

Smith filed a timely motion for reconsideration on December 15, 2014, Doc. 189, 190, and supplemental filings as he obtained new evidence. Doc. 193, 194, 195, 197. In February 2015 Smith obtained TCF Bank's delayed production, including an operating agreement for a Hansmeier-related entity called Monyet LLC and evidence of Hansmeier's transfers to Monyet's Scottrade account, and issued a subpoena to Scottrade. Doc. 197-2; AA48, AA63. Scottrade's production showed that Hansmeier had transferred $316,250 out of Monyet's account in between Smith's November 2013 itemization of fees and the February 2014 show-cause hearing. AA114-119.

On June 5, 2015 the district court granted Smith's motion for reconsideration; found Steele and Duffy "engaged in unreasonable, willful obstruction of discovery in bad faith" and awarded sanctions to Smith for "the additional expenses incurred in conducting discovery," directing Smith to submit reasonable costs; and found Steele and Hansmeier in civil contempt, ordering them to pay sanctions of $65,263 on or before July 15, 2015 for their contemptuous statements in court. SA16-17. Hansmeier noticed an appeal. AA1.

On July 2, 2015 Smith submitted an itemization of his $94,343.51 in additional expenses incurred in conducting discovery. AA32-75. On July 23, 2015 the district court ordered Steele and Duffy to pay that amount, apportioned equally, before August 10, 2015. SA18. Steele noticed an appeal. AA2. On August 10, 2015, the district court issued a notice regarding its discovery sanctions order: "After reviewing the docket in this case, it appears the PDF order did not attach to Doc. [210]. The Clerk's office has now modified Doc. [210] to include the PDF order." Doc. 213; No. 15-2682 SR2-5.

On July 13, 2015, two days before the contempt sanctions were due, Hansmeier filed a petition for bankruptcy in Minnesota listing Steele as a co-debtor for the contempt sanctions. *See* No. 15-2440, Doc. 18-4 pp. 16, 20.[3] Before August 10, 2015, Steele wire transferred $47,171.75 (his half of the discovery sanction) and $65,000 (all but $263 of the contempt sanction) to the district court, which is holding it for distribution after this appeal. Doc. 216, 212 p. 7. Hansmeier moved to stay his appeal pending his bankruptcy proceeding, citing 11 U.S.C. § 362. Motion to Stay Appellate Proceedings, No. 15-2440 (filed Aug. 17, 2015). The Court denied his motion. Order, *id.* (Sept. 2, 2015).

Duffy died on August 10, 2015.[4] He had not contested reconsideration or the amount of the sanctions award. *See* SA2 n.1. Steele and Hansmeier are facing attorney discipline from the Illinois Attorney Registration and Disciplinary Commission[5] and Minnesota's Office of Lawyers Professional Responsibility,[6] respectively, for their conduct in this case and others.

## SUMMARY OF THE ARGUMENT

The district court did not abuse its discretion or err in finding Steele and Hansmeier in contempt, and finding that Steele obstructed discovery. Ample evidence showed that between the November 2013 sanctions hearing and February 2014, when Steele and Hansmeier contemptuously claimed an inability to pay the $261,025.11 sanctions award

---

[3] The U.S. Trustee has moved to convert Hansmeier's bankruptcy to Chapter 7. "Allowing the debtor to proceed in chapter 13 is tantamount to permitting the debtor to continue his campaign to thwart his creditors and the judicial process." Motion to Convert Case to Chapter 7 Case, *In re Hansmeier*, Bankr. No. 15-42460 (Bankr. D. Minn. filed Nov. 12, 2015).

[4] *See* Megan Geuss, *Prenda-linked copyright trolling lawyer Paul Duffy Dead at age 55*, Ars Technica (Aug. 14, 2015), http://arstechnica.com/tech-policy/2015/08/prenda-linked-copyright-trolling-lawyer-paul-duffy-dead-at-age-55/.

[5] *See* Amended Complaint, *In re Steele*, Comm'n No. 2015PR00068 (Ill. Att'y Regis. & Disc. Comm'n Hr'g Bd. filed Aug. 20, 2015), https://www.iardc.org/15PR0068CM.html.

[6] *See In re Petition for Disciplinary Action Against Paul Hansmeier*, File No. A15-1855 (Min. Sup. Ct. filed Oct. 28, 2015), *available at* http://kstp.com/kstpImages/repository/cs/files/Hansmeier%20News%20Release.pdf.

they owed, each of them had diverted more than enough funds from their accounts to satisfy the sanctions order. Their arguments that those funds were unavailable—because Steele put his funds in a joint bank account with his wife until he spent it on home renovations, and because Hansmeier gave his funds to his wife and his law firm—are frivolous and fail as a matter of law. Ample evidence also showed that Steele unreasonably and willfully obstructed discovery in bad faith. Knowing that discovery of his financial records was not stayed, he sent one of his subpoenaed banks, Sabadell, an order staying the original contempt sanctions. Steele misled Sabadell into not complying with the subpoena and there was no abuse of discretion in finding he demonstrated his knowing interference.

The district court also acted within its discretion in granting Smith's motion for reconsideration. Smith informed the district court that the plaintiff's attorneys had not complied with discovery requests, and that their groundless motions to quash and Steele and Duffy's sanctionable obstructions had so stymied discovery that many third parties subpoenaed in early 2014 had not yet produced responsive documents by the November 2014 motion hearing. The district court had overlooked evidence already of record showing that Steele had obstructed discovery. Newly discovered and previously unavailable evidence from Sabadell, TCF, and elsewhere supported reconsidering the issues of contempt and obstruction. There was no abuse of discretion in reconsideration.

There was neither abuse of discretion nor error in the amounts awarded in sanctions. The compensatory civil contempt sanction, assessed at 25% of the 2013 sanction award, was not arbitrary and was reasonably calibrated to address the contemnors' pattern of misdeeds, considering Steele's profits. The discovery sanctions remedied Smith's documented expenses incurred in conducting third-party discovery necessitated by the

attorneys' failure to honestly disclose, and obstruction of discovery about, the financial resources they placed at issue. The district court appropriately compensated Smith for exposing the attorneys' latest manifestations of misconduct.

## ARGUMENT

### I.     Standard of Review

The issues presented are reviewed for abuse of discretion. *Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 541-42 (7th Cir. 1995) (contempt); *Greviskes v. Universities Research Ass'n*, 417 F.3d 752, 760 (7th Cir. 2005) (discovery sanctions); *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 814 (7th Cir. 2012) (Rule 59(e) reconsideration). Findings of fact are reviewed for clear error, and legal conclusions are reviewed *de novo. In re Taylor*, 793 F.3d 814, 818 (7th Cir. 2015).

### II.    The district court did not abuse its discretion or err in finding Hansmeier and Steele had engaged in civil contempt.

The district court did not abuse its discretion or clearly err when it found Hansmeier and Steele in civil contempt for misrepresenting their ability to pay the 28 U.S.C. § 1927 sanctions. "To succeed on a contempt petition, [Smith] had to demonstrate by clear and convincing evidence that the appellants violated the express and unequivocal command of a court order." *Lightspeed I*, 761 F.3d at 711. Smith has satisfied that burden again.

### A.     Hansmeier and Steele violated a clear order of the court.

The district court unequivocally ordered Hansmeier and Steele to submit documentation sufficient to evaluate their ability to pay the Section 1927 sanctions and decide the first contempt motion.

> [L]et me revise what I said earlier about what you need to provide me so that I can decide the contempt motion. I don't want your affidavit. I want your assets statement from a certified public accountant. I don't want it from you. After looking at Judge Murphy's order, I want that from a

8

certified public accountant. I want a certified profits and loss or certified net worth statement.

Doc. 127 p. 37:23-38:5. "I'll give you ten days instead of seven for that certified statement as to your net worth, but get that to me so that I can decide this other thing [defendants' contempt motion]." *Id.* 39:2-4. They correctly characterized that directive as an order in an earlier appeal brief: "At the conclusion of the hearing, the district court ordered Duffy, Steele and Hansmeier to submit a CPA-prepared statement of financial condition within ten days to verify their respective assertions of inability to pay." No. 14-1682, Br. p. 5 (7th Cir. filed June 18, 2014); *accord* Doc. 157 p. 3. They have not contested that the order to verify their assertions was clear.

Hansmeier and Steele violated that order and frustrated its purpose by submitting misleading, materially incomplete documents that concealed their recent expenditures. For more than a year after, they impaired the district court's assessment by maintaining that their submissions accurately showed their inability to pay. Those misleading statements amounted to contempt. They wrongly contend that the district court was not entitled to base its findings of civil contempt on arguments they made in legal memoranda. Br. 8-9. "The district court may find a defendant in civil contempt if he has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *American Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982). They violated the order by attempting to accomplish the opposite, obscuring their financial resources. This violation was more grave than the simple failure to pay, for which they were found in contempt in 2014, because the attorneys set out to evade the order and avoid the court's scrutiny. *See id.* at 518 & n. 9 (affirming contempt finding based on mere "paper compliance"); *NLRB v. HH3 Trucking*, No. 05-1362, 2012 U.S. App. LEXIS

26889, *3 (7th Cir. Aug 30, 2012) (granting civil contempt order against respondents with "history of attempting to hide their assets from various courts"); *Teledyne Techs., Inc. v. Shekar*, No. 15-cv-1392, 2015 U.S. Dist. LEXIS 78224, *34-35 (N.D. Ill. June 17, 2015) (finding defendant in contempt for returning plaintiff's property once ordered, but in unusable condition).

## B.    The district court properly found Hansmeier and Steele had contemptuously misstated their ability to pay the sanctions.

In February 2014, when ordered to verify their claimed inability to pay the $261,025.11 in sanctions they faced in November 2013, Hansmeier and Steele did not adequately account for funds they had dissipated in the intervening months. In that time, Hansmeier transferred more than $300,000 out from a Scottrade account he managed, mostly to his wife, while in January and February 2014 Steele spent more than $300,000 on home renovations. For the district court,

> With regard to the Motion for Contempt (Doc. 135), the question before the Court [was] whether Lightspeed's Counsel, as of November 2013, had sufficient assets to pay the fee order.

AA29. It was proper to measure the issue of contempt from that time, when the amount they would face in sanctions was known.

## 1.    The sanctions were anticipated by the November 13, 2013 hearing or, at latest, November 22, 2013.

Smith moved for sanctions under 28 U.S.C. § 1927 on April 5, 2013. Doc. 61. The district court granted his motion on October 30 2013, ordering him to file an itemization of fees. Doc. 65. Hansmeier and Steele moved to vacate or reconsider. Doc. 66, 68. Comcast and AT&T also moved for Section 1927 sanctions. Doc. 78, 82. On November 12, 2013 Smith itemized $72,367 in fees and argued the attorneys should be jointly and severally liable. Doc. 90, 92 pp. 17-19. At the November 13, 2013 motion hearing, the

district court agreed with defendants: "This was abusive litigation. This is simply filing a lawsuit to do discovery to find out if you can sue somebody. That's just utter nonsense." Doc. 101 p. 24:14-17; *see also id.* 26:4-5 (calling the case "pointless, worthless, a sham"). The district court repeatedly called Smith's fee request "modest." *Id.* 4:17-22, 5:19-23; 17:6-13 ("That's what you call bargain rates around here."). The court anticipated that the other defendants' fee requests would be "a couple of hundred thousand bucks each," and opined that the attorneys' "chances of being successful on appeal are somewhere between slim and near zero." *Id.* 25:3-6, 26:13-15. By then, Hansmeier and Steele could anticipate their imminent obligation to pay defendants' requested sanctions.

At latest, they knew they faced a total of $261,025.11 in sanctions by November 22, 2013, when the last defendant's bill of costs was filed.[7] The district court sanctioned the attorneys jointly and severally in that amount on November 27, 2013. SR14.

## 2. Hansmeier had more than enough in the Monyet, LLC Scottrade account to pay the sanctions before he drained it.

Between defendants' last bill of costs on November 22, 2013, when Hansmeier knew the impending liability was for $261,025.11, and the February 13, 2014 show-cause hearing at which he denied his ability to pay, he transferred more than that amount out of a Monyet, LLC account at Scottrade he controlled as its sole manager and signatory.[8] He had seeded the Monyet account with $180,000 in personal checks and $265,000 in checks from his Alpha Law Firm from December 2010 to June 2012. Doc. 172-21; SA15.

---

[7] AT&T filed a bill of costs for $119,637.05 on November 15, 2013. Doc. 97. Comcast filed a bill of costs for $69,021.26 on November 22, 2013. Doc. 98.

[8] In his *Guava* debtor's exam, Hansmeier claimed Monyet was a trust for his son as beneficiary, Doc. 190-3 at 38:11-12, 18, and "[t]he Monyet distributions were for estate planning purposes." id. 38:7-8. *See* SA15-16.

On November 22, 2013, the day the last defendant filed its costs, Hansmeier wired $175,000 from Monyet to his wife Padraigin Browne.[9] AA116. Next, he wired $21,250 to Robert Balzebre on December 9, 2013, $20,000 to his Class Justice PLLC law firm on January 17, 2014, and $70,000 more to his wife on February 7, 2014. AA117-119. With sanctions looming, those four transfers alone drained $286,250 from Monyet.[10]

The district court was informed of Hansmeier's history of draining financial accounts he controlled when sanctions were on the way. When Alpha faced sanctions in *Guava* for bad faith litigation, he made an $80,000 mortgage payment from his Alpha account, further depleted its accounts with "large transfers to Monyet," Doc. 194-1 p. 13, and dissolved it soon after judgment entered. Doc. 135 p. 9, 135-27 to 135-30. "Hansmeier knew of the possibility of sanctions in this action, transferred Alpha's money away, and terminated Alpha to avoid paying the judgments in this action."[11] Doc. 194-1 p. 16. The district court properly found him in contempt when he depleted Monyet's accounts knowing the Section 1927 sanctions were coming. Hansmeier knows first-hand from *Guava* that transfers when sanctions are impending are highly relevant, so it is galling that the attorneys argue that only Monyet's post-depletion account balance matters. Br. 17-18.

---

[9] At an October 28, 2015 deposition in his bankruptcy case, Hansmeier testified that he agreed with his wife's testimony that this $175,000 was for "household expenses." Paul Hansmeier Depo. Trans. pp. 43:7-44:6, *In re Hansmeier*, Bankr. No. 15-42460 (KHS) (Bankr. D. Minn. Oct. 28, 2015). He also agreed with her testimony that another $30,000 wired to her from Monyet on August 27, 2013 was "essentially for everyday living expenses." *Id.* p. 38:15-39:3; AA111.

[10] On November 19, 2013, three days before Comcast's bill of costs, Hansmeier had transferred another $30,000 out from Monyet: $20,000 more to Class Justice PLLC and $10,000 to the attorneys' erstwhile appellate counsel Voelker Litigation Group. AA114-115; *see* Roy Strom, *Lawyers in sanctions backfire have history*, Chi. Daily L. Bull. (Nov. 23, 2015), http://www.chicagolawbulletin.com/Articles/2015/11/23/john-steele-sanctions-11-23-15.aspx.

[11] Affirming, the Minnesota Appeals Court found "[t]he record supports those findings, which clearly show that Hansmeier abused the corporate-liability shield to avoid paying sanctions in a bad-faith lawsuit for which he was responsible." *Hansmeier v. Merkel (In re Guava LLC)*, No. A15-0254, 2015 Minn. App. Unpub. LEXIS 826, *19 (Minn. App. Ct. Aug. 17, 2015).

### 3.    Steele had more than enough in his Sabadell account to pay the sanctions but diverted it to home renovations.

Steele, while claiming he could not pay $261,025.11 in sanctions, bankrolled home renovations that cost far more through a Sabadell account. SA15; *see* Br. 26 ("Steele invested substantial amounts of time and money in gutting and renovating the home during this time."). On November 19, 2013, after the sanctions hearing and after Smith and AT&T filed their combined $192,004.05 in itemized expenses, Steele filed a notice of his commencement of improvements with the Miami Building Department. Doc. 172-26 p. 1 ("complete interior demolition + remodel, new windows + doors, new; HVAC, plumbing, electrical, sewer + waste, exterior remodel, landscape driveway"). On January 30, 2014, one day after Steele argued that his liability "would impose a crippling financial liability" on him, Doc. 115 p. 3, the Building Department recorded his notice of further improvements. Doc. 172-26 p. 2 ("new pool, spa, deck").

On December 11, 2013, two weeks after the $261,025.11 sanctions order, Steele opened a joint checking account at Sabadell with a $16,994.31 deposit. AA141-144; Doc. 192 p. 2. He deposited another $289,640.82 there by February 13, 2014, for a total of $306,635.13. Doc. 190 pp. 7, 17-23. At the show-cause hearing Steele asked for a chance to show "that I do not have the ability to write a check for $250,000." Doc. 127 10:12-16. In January and February 2014 he drew $355,627.83 in checks and cashier's checks from the Sabadell joint account (Doc. 190 pp. 7, 17 & 30), spending $307,023.83 of that on home renovations: $245,010 for his contractor Huffco Construction (*id.* pp. 15, 44, 45, 47, 49 & 50), $38,955 for Swimming Pools of Florida (*id.* pp. 14, 37, 42-43) and $23,058.83 spent at Lowe's (*id.* p. 24).

**4.    The district court properly measured the issue of contempt from the time the amount of sanctions was clear.**

The attorneys argue that the district court erred by tallying their ability to pay based on funds they had available in November 2013, when the amount of sanctions they faced was clear, rather than after they drained and diverted their funds. Br. 17-18. Stating the argument exposes its frivolity. There is no error in judging ability to pay at the time payment was expected or due, rather than after a later order to show cause for noncompliance. *See Blakes v. Foutch*, 600 Fed. App'x 1004, 1005-06 (7th Cir. 2015). Sanctions may be imposed for culpable conduct that precedes an order directing compliance. *Beck v. Test Masters Educ. Servs.*, 289 F.R.D. 374, 382 (D.D.C. 2013) (imposing Rule 37(b) sanctions for spoliation before discovery order was issued). Evading payment orders by depleting accounts is civil contempt. *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 416-17 (7th Cir. 1995). And evidence that a contemnor had spent the money at issue "by the time the judge instructed him to pay" can establish his "ability to comply at the critical time." *In re Cook*, 49 F.3d 263, 265 (7th Cir. 1995).

Hansmeier and Steele were properly held in contempt upon evidence showing that they were "responsible for their own inability to comply." *United States v. Seetapun*, 750 F.2d 601, 605 (7th Cir. 1984). "Self-induced inability is not a defense to a contempt proceeding." *United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980); *accord In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir. 1991); *In re Lawrence*, 279 F.3d 1294, 1300 (11th Cir. 2002) (finding impossibility defense to contempt invalid when "the asserted impossibility was self-created"); *United States v. Lay*, 779 F.2d 319, 320 (6th Cir. 1995) (affirming civil contempt; defendant "consciously induced this purported inability to comply by divesting himself of his assets through property and monetary

conveyances to other family members"). Inability is no defense when a contemnor acts to prevent himself from later complying with an anticipated or expected adverse award or order. *Lawrence*, 279 F.3d at 1300; *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1232 (9th Cir. 1999) (rejecting "inability to comply" that was the intended result of an irrevocable trust established by contemnors three years before FTC complaint and repatriation order); *cf. In re Vaughn*, 765 F.3d 1174, 1181-82 (10th Cir. 2014) (finding debtor's expensive purchases violated duty to pay taxes which he knew or should have known would be assessed).

Even if only present inability to comply were pertinent to contempt, regardless of whether it was self-induced, Steele and Hansmeier's resources rendered their claimed inability spurious. Both owned homes worth more than the sanctions amount, among a multitude of other assets. In a contempt proceeding, such assets give the lie to claimed inability to pay. *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 287 (7th Cir. 2014).

When an attorney argues he cannot pay an amount ordered, the court is well within its discretion to ask not just how much money is left, but "where all this money went." *United States v. Gelline*, 182 F.3d 578, 598 (7th Cir. 1999). *Cf. Newlin v. Helman*, 123 F. 3d 429, 435 (7th Cir. 1997) ("It is not enough that the prisoner lack assets on the date he files [for leave to proceed *in forma pauperis*]. If that were so, then a prisoner could squander his trust account and avoid the fee."); *Wilson v. Sargent*, 313 F.3d 1315, 1321 n. 7 (11th Cir. 2002). The district court did ask, "where are they keeping the money?" Hr'g Tr. 7:24-8:19; *see also id.* 33:12-19 ("where did the money go?"). The question is not yet fully answered, *see* Doc. 189 p. 8, but Smith properly showed that Steele and Hansmeier each diverted more than they had to pay.

### C.   The attorneys fail to identify any material error in the district court's analysis of their contempt.

"Appellants next throw a variety of arguments regarding the substantive ruling against the wall, with the hope that one might stick. None does." *Lightspeed I*, 761 F.3d at 708. Reviewing the district court's analysis of their latest contempt, the attorneys claim to identify error in four issues. Two are immaterial, two are not error, and none are grounds for reversal.

### 1.   It is immaterial whether Hansmeier was a member of Monyet because he had undisputed access to its funds.

The attorneys note that Hansmeier was not a member of Monyet. Br. 16-17. Monyet's operating agreement says its sole member is The Mill Trust, though Smith mistakenly called Hansmeier Monyet's "sole member" and the district court followed suit. AA89; Doc. 197 ¶ 6; SA15. The attorneys say the distinction is "critical," Br. 17, but it makes no difference. Any error was harmless because the contempt finding did not hinge on whether Hansmeier was a member of Monyet. The salient issue was his access to its accounts, and Hansmeier does not dispute being Monyet's sole manager and signatory. *See* AA80, AA82-83, AA93; SA15. He is The Mill Trust's grantor, his wife Browne is its trustee, AA102, and he believes they are its only signatories.[12] The distinction does not undermine the central finding that "Hansmeier had access to the Monyet funds." SA16.

The access finding is confirmed by reviewing the payees of his Monyet transfers. From July 2013 to March 2014, Hansmeier doled out $280,000 to his wife; funded his single-member law firm Class Justice PLLC ($115,000) and his and Steele's

---

[12] Paul Hansmeier Depo. Trans. p. 24:8-12, *In re Hansmeier*, Bankr. No. 15-42460 (KHS) (Bankr. D. Minn. Oct. 28, 2015).

pornographic film company LiveWire Holdings[13] ($20,000); used the rest of Monyet's

funds to pay his appellate counsel ($23,750) and post his appellate bonds ($130,333.50,

plus $21,250 to Mr. Balzebre[14]) in several sanctions proceedings against him. AA104-

121. Hansmeier not only had access to Monyet's funds; he used it as his piggybank. Also,

Hansmeier and his Alpha Law Firm had poured $445,000 into Monyet. SA15, Doc. 172-

21, Br. 17. A defense predicated on him committing such vast assets to an account he

could not or did not control strains credulity. *See Affordable Media, LLC*, 179 F.3d at

1231 ("While it is possible that a rational person would send millions of dollars overseas

and retain absolutely no control over the assets, we share the district court's

skepticism."). Membership in Monyet is immaterial and the district court did not err.

## 2.     It is immaterial that Steele deposited his funds into a tenancy by the entirety with his wife.

The attorneys argue that Steele's money became unavailable once in his Sabadell

account for home renovations because the account was held in tenancy by the entirety

with his wife. Br. 27. This is frivolous, specious logic. Steele had undisputed control over

and access to funds before he chose to pool them in a joint account, opened once the

sanctions were due, with his then-wife Kerry Steele (*see* Doc. 177). His deposits to their

account include checks made out to him personally, *see* Doc. 190 pp. 16 ($116,395.89) &

119 ($3,500), and wire transfers from Steele's Phoenix Ventures LLC[15] accounts totaling

---

[13] *See generally* Claire Suddath, *Prenda Law, the Porn Copyright Trolls* p. 4, BusinessWeek (May 30, 2013), http://www.bloomberg.com/bw/articles/2013-05-30/prenda-law-the-porn-copyright-trolls#p4.

[14] Hansmeier testified in his bankruptcy proceeding that this December 9, 2013 payment of $21,250 was to repay his half of funds Balzebre advanced for a bond the attorneys' posted to stay a sanctions award in another case. Paul Hansmeier Depo. Trans. pp. 44:15-45:24, *In re Hansmeier*, Bankr. No. 15-42460 (KHS) (Bankr. D. Minn. Oct. 28, 2015). *See* AA117; *see also* Doc. 172-17 p. 5 (Steele's December 9, 2013 $21,125 payment to Balzebre).

[15] Steele operated Phoenix. *See* Doc. 172-22. He withdrew $149,931 from its JPMorgan account in March 2011. Doc. 172-23. He then reseeded it with $100,000 on May 2, 2011, $73,100 on July

17

$277,000.[16] The funds' source was Steele or his Phoenix Ventures, and he cannot dodge liability by purporting to place his own money out of his reach when depositing it in a joint account. *See United States v. Kennedy*, 201 F.3d 1324, 1344-45 (11th Cir. 2000).

A marital tenancy by the entirety of funds does not avoid disgorgement from a spouse. "Such self-created penury does not exempt [defendant] from being held in contempt by this Court." *SEC v. Solow*, 682 F. Supp. 2d 1312, 1329-30 (S.D. Fla. Jan. 14, 2010), *aff'd*, 396 Fed. App'x 634 (11th Cir. 2010). On a show-cause order for civil contempt, the district court "may consider all potential sources of funds available to [contemnor], including jointly owned assets." *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 25 (D.D.C. 2000), *aff'd*, 75 Fed. App'x 3 (D.C. Cir. 2003). *Cf. Divane v. Krull Electric Co.*, 319 F.3d 307, 322 (7th Cir. 2003) (affirming Rule 11 sanctions against attorney alleged to have "unlawfully conveyed his residence from joint tenancy with his wife to tenancy in the entirety with his wife in an effort to avoid payment of the sanction award").

The attorneys claim manifest error because "[f]or Steele, the district court failed to recognize and apply Florida law with respect to tenants by the entirety." Br. 9. "The district court's failure to properly apply the law or even, for that matter, consider the law was an abuse of discretion." *Id.* at 27. Their claim is frivolous. They have not cited any Florida law about tenancy by the entirety in the district court or this Court, waiving the issue. *See* Doc. 192 pp. 2-3 (citing "black letter law" but no cases); Br. iii-iv & 25-27.

Citing cases would not have helped because a viable tenancy by the entirety in Florida must possess "unity of time (the interests must commence simultaneously)."

---

5, 2011, $50,000 on September 8, 2011 and $50,000 more on October 3, 2011. Doc. 172-24 pp. 2-5.

[16] The named recipients for Steele's Phoenix transfers to Sabadell were either Steele himself, Doc. 190 pp. 29 ($150,000) & 122 ($3,500); his then-wife Kerry Steele, *id.* pp. 61 ($50,000) ("funds for wife's home renovati[ons]"), 73 ($25,000) & 92 ($9,500), or the both of them, *id.* pp. 107 ($30,000), 135 ($2,000), 137 ($2,000), 139 ($5,000).

*First Nat'l Bank v. Hector Supply Co.*, 254 So. 2d 777, 781 (Fla. 1971). The funds Steele controlled before depositing them in Sabadell would not qualify. Florida law allows a conveyance of real property into a tenancy by the entirety unless it "operates to defraud any creditor or to avoid payment of any legal debt or claim." Fla. Stat. § 689.11(3). *See Hodgson v. Hotard*, 436 F.2d 1110, 1115-16 (5th Cir. 1971) (doubting validity of such a conveyance raised in support of a Floridian's self-created inability to pay contempt sanctions). "The Eleventh Circuit has been clear that the inability to pay is not a defense to civil contempt if the contemnor created the inability." *Solow*, 682 F. Supp. 2d 1312, 1335 (S.D. Fla. Jan. 22, 2010) (*citing Hodgson* and *Lawrence*), *aff'd*, 396 Fed. App'x 635 (11th Cir. 2010). And in Florida, personal property supposedly committed to tenancy by the entirety is less protected than real property because "the intention of the parties must be proven." *Hector Supply Co.*, 254 So. 2d at 780. Steele failed to support the argument with probative evidence. His self-serving claim that his ex-wife would not consent to applying their joint funds to the sanctions, Br. 27, is uncorroborated and could not support his burden of production. *See United States ex rel. Thom v. Jenkins*, 760 F.2d 736, 739 (7th Cir. 1985). Florida law defeats his defense. The attorneys seem willfully blind to contrary authority. *See* Doc. 93.

When assessing Steele's claimed inability to pay, the district court did not err or abuse its discretion in considering the funds he controlled before he was sanctioned, and before he chose to pool them in a joint account with his then-wife. Steele's duty was "to make good faith efforts to pay as much of the judgment as possible, not to obfuscate his burden in these proceedings by arguing the non-issue of tenancy by the entireties." *Solow*, 682 F. Supp. 2d at 1330 (*quoting Bilzerian*, 112 F. Supp. 2d at 26 ("the Court is not limited to considering only [defendant's] individually owned assets in determining

his ability to comply")). Steele depositing his funds in a tenancy-by-the-entirety account was material only because it was part of how he consummated his contempt.

### 3.    It is frivolous to argue that the district court "failed to apply basic arithmetic" by counting Hansmeier's funds before their depletion.

A third alleged error, that the district court did the math wrong, is fatuous. The attorneys argue that the district court "failed to apply basic arithmetic to test whether the assets *remaining in Monyet after those transfers* were anywhere near sufficient to satisfy the $261,025.11 sanction obligation." Br. 17 (emphasis added). Hansmeier's contempt lay in denying his ability to pay, without disclosing that he had depleted Monyet when he knew he would owe sanctions—not in Monyet having nothing left thereafter. "[A] mere assertion of present inability' is insufficient to avoid a civil contempt finding." *Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing*, 207 F.3d 500, 506 (8th Cir. 2000). "[T]he *reasons* for the inability are often as relevant to a possible contempt finding as the fact of inability itself." *Id.* The district court did not err in seeing through Hansmeier's fabricated inability and finding his multiple divisory subtractions added up to contempt.

### 4.    Though Hansmeier and Steele lied to the district court, they were properly found in contempt for dissembling, not lying.

The attorneys perceive that they were held in contempt for making false statements, Br. 7, 8, but deny making any specific false statements and argue that the district court erred in finding otherwise. *Id.* 18-20, 25, 26. The argument misconstrues the grounds on which civil contempt both was, and can be, found. They never explain why a "paper compliance" standard of veracity should suffice to avoid contempt. *American Fletcher Mortgage Co.*, 688 F.2d at 518 n. 9. The district court rightly judged otherwise.

The attorneys made multiple false statements to the district court, over and above those identified in the Section 1927 sanctions order and original contempt order. SR14; AA8. Hansmeier falsely stated on March 26, 2014 that, "at all relevant times—Hansmeier did not have the ability to pay $261,025.11." Doc. 139 p. 5. On April 18, 2014, he argued that his financial statement "demonstrated that Hansmeier did not have the ability to pay $261,025.11" and that Smith "has not identified a single asset that Hansmeier failed to apply to the Sanctions Order." Doc. 154 pp. 3-4. Yet at a very relevant time, when sanctions were imminent in a foreseeable amount, Hansmeier could have paid in full. Likewise, Steele insisted that he had never suggested to banks that the discovery orders were stayed. Hr'g Tr. 11:18-12:10. But the district court found Steele's communications with Sabadell were a "knowing interference in Smith's discovery efforts." AA14. Steele also argued: "Nothing in the record explains why Smith did not present the information in his motion for reconsideration at the original motion hearing." Doc. 212 p. 6. Yet the record showed that Steele's bogus obstruction and Hansmeier's baseless motion to quash led Sabadell to postpone its production, precluding any earlier presentation of the evidence. AA35.

The district court could well have grounded its contempt finding on the attorneys' false statements.[17] But it did not expressly base contempt on their falsehoods. *See* SA16-17 (citing Steele and Hansmeier's "contemptuous conduct" and issuing sanctions for "contemptuous statements in court"). And it did not need to. The attorneys offer no reason why a standard pinning contempt to outright mendacity must apply. When ordered to disclose their financial resources, they concealed their recent expenditures'

---

[17] *See, e.g., In re Walters*, 176 B.R. 835, 867 (Bankr. N.D. Ind. 1994) ("Debtors' readiness to lie in the face of the Court is further evidence of their contempt for these proceedings.").

extent and purpose. Their contempt lay not just in lies and misrepresentations but in materially misleading statements and deceptive disclosures to the court, which often support civil contempt.[18]  The first contempt order against the attorneys was based in part on such "misrepresentations and half-truths presented [at the February 2014 show-cause hearing that] indicate plaintiff's counsel's clear disrespect of the Court." AA17. *See* No. 14-1682, Br. at 24-25 (the attorneys' brief in prior appeal: "the Court criticized Steele for not providing a 'full, truthful explanation' of a statement that was attributed to him"); *Lightspeed I*, 761 F.3d at 711. Heedless, they violated the district court order by telling more half-truths before, during and after the November 2014 show-cause hearing. It is true but irrelevant that "Hansmeier never pled insolvency to the Court" and "Steele never claimed insolvency." Br. 19, 26. The district court simply used the term "insolvency" as shorthand for "inability to pay," which both attorneys deceptively claimed. *See* SA14-SA16 ("despite their pleas of insolvency, Steele and Hansmeier had sufficient assets to satisfy the Fee Order"); *see also* Br. 26 ("What Steele did in fact claim was an inability to pay.") The second contempt finding was properly based on evidence that Hansmeier and Steele could have paid and evaded the obligation through self-impoverishment and misleading claims of inability to pay.

### D.     The district court properly entered remedial, compensatory sanctions to redress Hansmeier and Steele's civil contempt.

The attorneys argue at length that the contempt sanctions were punitive in character and therefore required criminal due process protections. Br. 20-24. The Court rightly

---

[18] *See United States ex rel. SBA v. Torres*, 142 F.3d 962, 969-70 (7th Cir. 1998); *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 757-58 (7th Cir. 2008); *Long v. McDermott*, 200 Fed. App'x 595, 597 (7th Cir. 2006); *United States ex rel. McCandliss v. Sekendur*, No. 03 C 807, 2014 U.S. Dist. LEXIS 37001, *16-17 (N.D. Ill. Jan. 27, 2014) (failure to disclose assets); *cf. FTC v. Trudeau*, 579 F.3d 754, 767 (7th Cir. 2009) (deceptive, misleading statements and lies violated consent order); *United States v. Griffin*, 84 F.3d 820, 826 (7th Cir. 1996) (criminal contempt).

rejected the same argument when they raised it about their 2014 contempt sanctions. *Lightspeed I*, 761 F.3d at 712; *see* No. 14-1682, Br. 9-11. The argument remains wrong and should be rejected again.

**1.     District courts have broad discretion to remedy civil contempt.**

Civil contempt is an equitable remedy. *In re Grand Jury Proceedings*, 894 F.2d 881, 884, 886 (7th Cir. 1989). Equitable principles control the measure of relief. *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 457 (1932). The district court has broad discretion to fashion appropriate remedies. "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949). "A court has broad discretion to fashion a remedy [for civil contempt] based on the nature of the harm and the probable effect of alternative sanctions." *Connolly v. J.T. Ventures & John Lange*, 851 F.2d 930, 933 (7th Cir. 1988). A fine for contempt "is remedial when it is paid to the complainant, and punitive when it is paid to the court." *Hicks on behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988).

"[S]anctions 'may exceed the amount of fees incurred by the opposing party' in order to protect 'the court itself' and other litigants, whose day in court is delayed by needless motions." *Masco Corp. v. Prostyakov*, 593 Fed. App'x 570, 571 (7th Cir. 2015). While the amount of a compensatory civil contempt sanction "must be supported in the record," *Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499 F.3d 737, 752 (7th Cir. 2007), it may be an approximation. *Lightspeed I*, 761 F.3d at 712 (affirming civil nature of sanctions assessed "without consulting billing statements"); *SEC v. First Choice Mgmt. Servs.*, 709 F.3d 685, 688-89 (7th Cir. 2013); *cf. Hutto v. Finney*, 437 U.S. 678, 691 (1978) (comparing civil and criminal contempt). And it need not be "based

upon evidence of complainant's actual loss." *Connolly*, 851 F.2d at 933-34 (internal citations omitted) (distinguishing coercive award in *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1946)); *accord Manhattan Indus. Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989). "Courts can fashion contempt sanctions based on the defendant's unjust enrichment, even if that amount might exceed the [moving party's] loss." *FTC v. Trudeau*, 579 F.3d 754, 774 (7th Cir. 2009) (*citing Connolly*, 851 F.2d at 932-34).

## 2.     The district court awarded compensatory civil contempt sanctions.

The contempt sanctions were civil because the relief was remedial and compensatory in character. *See Trudeau*, 579 F.3d at 769. A contemnor's profits are a proper measure of compensation for a civil contempt proceeding. *Connolly*, 851 F.2d at 934.[19] Steele's real estate profits support the amount assessed. Steele financed extensive home renovations with money he ran through his Sabadell accounts in lieu of timely paying the sanctions, putting off payments by claiming he could not afford to pay. SA15; *see* Br. 26 ("Steele invested substantial amounts of time and money in gutting and renovating the home during this time."). The home was purchased for $766,000 in April 2013, and owned outright. *See* Doc. 172-25, 190-1 p. 4, 193-2 p. 2 ("No Mortgage"). In August 2014, the home was conveyed to Samana LLC, a company with Steele as its sole shareholder. *See* Doc. 193 p. 4, 193-1. Under Steele's December 12, 2014 divorce settlement papers, he was to receive all proceeds from the sale of the marital home, less $300,000 for his ex-wife. Doc. 195-1 p. 3. The house was listed for sale at $1,600,000.

---

[19] Even if *Connolly* were read narrowly to support measuring a contempt award by the contemnor's profits only "where the underlying lawsuit sounded in copyright," *id.* at 932, it would be proper in this case. *See* Doc. 37 pp. 8-13 (discussing copyright preemption of plaintiff's state-law claims) & 15 ("all claims 'sound in copyright'"); Doc. 78 p. 8 ("Lightspeed had pled a CFAA claim to avoid the obvious conclusion that the case really sounded in copyright …").

Doc. 190-1. It sold for $1,555,000 in February 2015.[20] In finding contempt, the district court took note that "the value of Steele's home more than doubled" after his home renovations investments. SA15. Because Steele made his real estate profits at the expense of timely paying Smith, it was appropriate to compensate Smith based on Steele's unjust enrichment, "even if that amount might exceed the [moving party's] loss." *Trudeau*, 579 F.3d at 774. Contempt sanctions for a fraction of Steele's profit are reasonable compensation. *See id.* at 775 (contempt sanctions in excess of actual loss may be proper if "less than [the contemnor's] ill-gotten gains"). Steele readily posted $112,171.75 from which Smith may recover, Doc. 216, 212 p. 7. His proceeds should serve as both a basis and source for Smith's award. *See Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 957 (7th Cir. 2006) (discussing remedial aspect of restitution).

The attorneys' claim that the contempt sanctions were punitive rests heavily on *Jones v. Lincoln Electric Co.*, 188 F.3d 709 (7th Cir. 1999). *See* Br. 24-25. The case is inapposite and unhelpful to their claim. *Jones* concerns the application of civil contempt to false witness testimony, which requires "some element of obstruction of justice." *Id.* at 738; *see In re Michael*, 326 U.S. 224, 228 (1945); *Ex parte Hudgings*, 249 U.S. 378, 383-84 (1919). The attorneys were arguing at a motion hearing, not appearing as sworn witnesses under cross-examination at an evidentiary hearing. *See* Doc. 187; Hr'g Tr. They were found in contempt for deceit, not false statements, though they had plenty of both. And they did obstruct justice.[21] Refusing to testify is a hallmark of civil contempt,

---

[20] *See* Property History listing, http://www.realtor.com/realestateandhomes-detail/50-Samana-Dr_Miami_FL_33133_M68687-60520. The Court may take judicial notice of the publicly reported sale price. *See Deicher v. City of Evansville*, 545 F.3d 537, 541-42 (7th Cir. 2008).

[21] False testimony is material when it has the capacity of affecting or influencing the tribunal, whether or not it achieves that effect. *United States v. Henderson*, 185 F.2d 189, 191-92 (7th Cir. 1950) (false testimony that "influenced the judge in the exercise of his discretion ... was material to the issue before the court").

yet deceptive statements to the district court just as surely frustrate its ability to perform its duties. The district court had all the evidence necessary to find contempt at the time of the February 2014 show-cause hearing, except for the attorneys' financial records for the inability-to-pay defense. Adhering to that specious defense through the November 2014 show-cause hearing, and fighting tooth-and-nail against discovery that debunked the defense, undeniably "obstructed or halted the judicial process." Br. 25.

The attorneys received notice of Smith's contempt motion, an opportunity to be heard, and they were heard. No more process is due in a civil contempt proceeding. *See Lightspeed I*, 761 F.3d at 704, *SEC v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010).

### 3.   **The court properly set the amount of contempt sanctions.**

The district court assessed the 2014 contempt sanctions against the three attorneys by calculating 10% of the Section 1927 sanctions.[22] AA19. The latest order again used a percentage measure to calculate contempt sanctions, this time 25% of the Section 1927 sanctions. SA17. The attorneys argue that "this method of calculating the sanction amount resulted in a punitive sanction." SA22. They are incorrect.

This Court has endorsed a "percentage of recovery method" of assessing fees, *Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1246 n. 2 (7th Cir. 1995), including in civil contempt proceedings like the attorneys' prior appeal. *Lightspeed I*, 761 F.3d at 712. District courts have discretion to apply a multiplier to compensatory sanctions for civil contempt. *Dow Chem. Co. v. Chem Cleaning, Inc.*, 434 F.2d 1212, 1214 (5th Cir. 1970) (affirming doubled award for "knowing and willful" contempt); *Howard Johnson Co. v.*

---

[22] Appellants argue that the 2015 contempt sanctions "could not possibly serve a compensatory function" because the 2014 sanctions already did. Br. 23. The contention is without merit. The 2014 sanction served to compensate for fees incurred as the attorneys' "failed effort to demonstrate an inability to pay." *Id.* The 2015 sanction redresses distinct contemptuous acts of misleading the court to cloak their ability to pay. Neither sanction is redundant or duplicative. The first contempt sanctions were for nonfeasance, while the latest were for malfeasance.

*Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990) (affirming compensatory sanctions "multiplied by a factor of 1.5 due to 'the flagrant and deliberate nature'" of contemnor's actions).

The increased percentage reflected and sought to redress the attorneys' obdurate contumacy: "A pattern is purposely developing whereby the contemnors could find their way back to the full sanction Judge Murphy ordered for their original wrongdoing if they continue their misdeeds before this Court." SA17. The district court acted within its discretion in escalating its response to contempt that earlier sanctions failed to prevent. *See Domanus v. Lewicki*, 742 F.3d 290, 297-98 (7th Cir. 2014) (escalating contempt sanctions "informed by [contemnor's] pattern of discovery violations and recalcitrance"); *First Choice Mgmt. Servs.*, 709 F.3d at 689 (contemnor "will be courting additional sanctions, of increasing severity, if it does not desist forthwith from its obstructionist tactics"). *Cf. United States v. Williams*, 901 F.2d 1394, 1398 (7th Cir. 1990) (increased sentence to "account for the repeat nature" of criminal activity) (*citing United States v. Schmude*, 901 F.2d 555 (7th Cir. 1990)). The 25% increase from the 2014 sanction is a measured escalation. *See In re Nora*, 778 F.3d 662, 667 (7th Cir. 2015) (imposing increased sanction of $2,500 who continued sanctionable conduct after earlier $1,000 sanction); *Rojas v. Town of Cicero*, 775 F.3d 906, 910 (7th Cir. 2015) (an attorney's "unwillingness to conform [his] conduct to requirements laid down by judicial orders or rules of procedure is unlikely to change unless courts respond firmly").

The attorneys argue that their contempt inflicted no harm on Smith and note that the district court did not expressly link the amount awarded to any financial harm Smith suffered. Br. 22-23. Civil contempt does not require such a link. *Connolly*, 851 F.2d at 953-54. And Smith was harmed. His commitment to expose their misdeeds has forced

him to keep litigating this case years after plaintiff abandoned all pretense of pursuing relief on the merits. AA3. *See* Doc. 153 p. 6.

The district court properly compensated Smith and should be affirmed.

## III. The district court did not abuse its discretion or err in finding Steele obstructed discovery.

## A.    The record supported discovery sanctions.

The court had ample grounds to impose sanctions for obstructing discovery. Smith showed that plaintiffs' attorneys never complied with his requests for discovery about their financial records and pointed to evidence that "refute[d] assertions made by Duffy and Steele at the November 12, 2014 hearing that they did not intentionally mislead any third party institutions about the status of the discovery subpoenas." SA13.

Steele and Hansmeier argue that Steele's communications with JPMorgan were not sanctionable. Br. 29. They do not deny that Duffy intentionally obstructed discovery from JPMorgan by sending a motion to quash weeks after it was denied. SA13-14. He had sent an unfiled, unstamped copy of the motion that left JPMorgan guessing as to when it was filed, or whether, and in which court. *See* Doc. 193-3 p. 4. The district court properly exercised its discretion in finding Steele's first salvo to JPMorgan left him culpable for participating in interference with Duffy. SA13.

It also properly found Steele obstructed discovery by sending Sabadell a copy of an order staying the contempt sanctions pending appeal, Doc. 148, to foster the mistaken belief that it should not comply with Smith's subpoena.[23] *See* AA28; AA146-148. Steele

---

[23] The attorneys do not contest that Duffy also fostered a misconception that discovery was stayed by sending JPMorgan a motion to quash weeks after the motion was denied. Doc. 189 p. 4, 193-3 pp. 4-5.

admitted sending the order to at least one bank,[24] but denied advising as to how to interpret the order. *Id.*; *see also* Hr'g Tr. 11:18-12:10. As Smith noted in his motion for reconsideration, Steele boasted about notifying subpoenaed third parties that "the action has been stayed and any outstanding subpoenas must be withdrawn." Doc. 153-1; 189 p. 5. The district court had stayed the first contempt sanctions against plaintiff's attorneys, not Smith's discovery. *Id.* Yet when Steele sent Sabadell the order on April 16, 2014, he said misleadingly, "The subpoena you have is dated March 26, 2014, and the order I have included shows that the Court stayed the matter on April 4, 2014." AA148; Doc. 189 p. 5.

The district court found Steele's Sabadell handiwork "demonstrates his knowing interference in Smith's discovery efforts." SA14. The attorneys argue that Steele did not engage in discovery misconduct and "[t]he district court's conclusion lacks a basis in law or fact." Br. 28, 30. They show no abuse of discretion or clear error in the district court taking a different view. An attempt to reargue credibility determinations on appeal is frivolous without documentary or other evidence contradicting the finding. *Rumsavich v. Borislow*, 154 F.3d 700, 703-04 (7th Cir. 1998)); *see Clark v. Runyon*, 116 F.3d 275, 278 (7th Cir. 1997). They raise no evidence refuting the Sabadell discovery obstruction.

The attorneys argue that because Sabadell eventually produced documents, "nothing about Steele's communication with Sabadell actually impeded discovery" and that "not even Sabadell interpreted Steele's communication to reference a stay of any 'subpoena matter.'" Br. 31. That is frivolous and wrong. They do not deny that after hearing from

---

[24] "Steele told so many subpoenaed third parties not to respond to discovery that he lost track, giving the securities broker GMS Group ('GMS') the same false notice that a stay was in place, though Smith had not subpoenaed GMS." Doc. 176 p. 3; *see* Doc. 165 p. 6 n.6, 165-4, 179 p. 5.

Steele, Sabadell withheld its production responsive to the March 2014 subpoena until November 2014. Steele was rightly found liable for interfering with discovery.

**B.     The district court fully explained the grounds for discovery sanctions.**

The district court fully explained the rationale for the discovery sanctions award in a written order docketed August 10, 2015, Doc. 213; No. 15-2682 SR2-5, correcting a July 21, 2015 minute entry that omitted the written order. Correction was proper under Fed. R. App. P. 10(e)(2) and consistent with Fed. R. Civ. P. 60(a) because the appeal had not yet been docketed in this Court. The attorneys argue that entry of the corrected order was without jurisdiction and is outside the record on appeal because Steele had filed his notice of appeal three days earlier. Br. 8. But that sort of omission was subject to correction under Rule 60(a), due to "the judgment's failure to reflect the actual intention of the court." *Klingman v. Levinson*, 877 F.2d 1357, 1361 (7th Cir. 1989).

Even without Rule 60(a), "[d]istrict courts have inherent authority to enter *nunc pro tunc* orders to show what was actually done but not properly or adequately recorded." *LeBeau v. Taco Bell*, 892 F.2d 605, 609 n. 3 (7th Cir. 1989). And even if not for Rule 60(a) and the court's inherent authority to make such corrections, this Court would be entitled to weigh the statements in the August 10, 2015 order to understand the district court's reasoning and intent. *See Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 45 n.2 (1st Cir. 2006). The clarification was appropriately "in aid of the appeal." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1240 (7th Cir. 1986).

**C.     The district court imposed sanctions commensurate with the additional costs Smith incurred in third-party discovery.**

The attorneys argue that "[t]he district court erred by imposing a $94,343.51 discovery sanction on Steele" and the award was "grossly excessive." Br. 27, 28, 31-33.

Neither argument is true. The district court imposed only half that sanction, $47,171.75, on Steele; the full $94,343.51 award was "apportioned equally between Steele and Duffy." SA18. *See also* SA16; No. 15-2682, SR3; Doc. 216. The discovery sanctions award directly compensated all discovery costs the attorneys imposed on Smith.[25] *See* AA32-50. The district court acted within its discretion in awarding Smith all fees reasonably incurred in discovery, and all fees awarded were reasonably incurred.

Smith initiated discovery when the attorneys claimed they could not pay the original Section 1927 sanctions, putting their financial resources at issue. Smith sought third-party discovery, correctly anticipating the attorneys would not respond to his requests for production and interrogatories. All his third-party discovery costs were necessitated by the attorneys' chosen path of misconduct: not paying sanctions, misrepresenting their financial affairs to the district court, avoiding direct discovery and, in the case of Steele and Duffy, obstructing third-party discovery. *See* AA37-40.

There was no abuse of discretion in a sanctions award for Smith's full costs of litigating the post-sanction discovery, under 28 U.S.C. § 1927 and Rule 37. No. 15-2682 SR2-5. Under Section 1927, Smith was "entitled to compensation for excess expenses created by obfuscation and dissimulation." *Matos v. Richard A. Nellis, Inc.*, 101 F.3d 1193, 1196 (7th Cir. 1996). The extent of the toll the attorneys would face for continued misconduct was reasonably foreseeable because the district court had already held them liable under Section 1927 for the entire cost of litigating the case, including attorney's fees, No. 15-2440, SR11 ("the imposition of attorneys' fees under § 1927 is appropriate here—from the inception of the claims through the present"), and this Court affirmed:

---

[25] Though the discovery sanctions sought make Smith whole, half were due from Duffy, who died before paying, and the amount Steele posted in the district court does not cover Duffy's share. *See* Doc. 216. Smith's recovery of expenses incurred should not be further restrained.

"There was no abuse of discretion in the court's decision to grant either the ISPs or Smith fees for the entire case." *Lightspeed I*, 761 F.3d at 708-09. An appeal raising issues already decided in a previous appeal is frivolous. *Trecker v. Scag*, 747 F.2d 1176, 1179 (7th Cir. 1984).

Likewise, the sanction for full costs should be affirmed under Rule 37(b). It was Steele's duty to follow the discovery rules in good faith and his burden to show that it would be unjust to impose sanctions. Fed. R. Civ. P. 37(b)(2), adv. comm. note (1970 amendments) ("The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust."). Under Rule 37(b), willfulness is not required, but it is relevant to the selection of sanctions. *Id.* (*citing Societe Internationale v. Rogers*, 357 U.S. 197 (1958)). The district court found "that Duffy and Steele both engaged in unreasonable, willful obstruction of discovery in bad faith." SA14. In its discretion, the district court found Smith's expenses fully recoverable and "eminently reasonable given the history of this litigation and the more than a year Smith spent defending against obstructionist tactics and engaging in extensive discovery to obtain proof of Duffy and Steele's misconduct." No. 15-2682 SR5. The district court properly considered the sanction as this Court reviews sanctions, "not in isolation but in light of 'the entire procedural history of the case.'" *E360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011) (*quoting Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000)). Full recovery was proper redress for discovery obstructions to cover up the attorneys' deceit.

The attorneys argue that Steele should not be held liable for costs incurred before his identified discovery obstructions, and costs of discovery from third-parties he did not personally obstruct. Br. 31-32. His first identified obstructive act was communicating

with JPMorgan on January 29, 2014. SA13. Of Smith's $94,343.51 in itemized expenses, only $4,744.40 in fees precede that date, AA52. Half of those earlier fees were for preparing discovery requests sent to Steele and the other attorneys on January 21, 2014. *Id.* The district court properly ordered Steele and Duffy to pay for all Smith's third-party discovery expenses because they could have obviated those expenses in many ways: by not interfering with any discovery; by fully responding to Smith's direct discovery requests; or, in Steele's case, by timely paying the sanctions instead of diverting money to home renovations, and by not falsely claiming an inability to pay. Any discovery cost made necessary by obstruction in compensable. *See* AA38-40; *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir. 1984) (Rule 37 sanctions "should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly").

## IV.    The district court rightly reconsidered Smith's motions.

The attorneys cannot plausibly claim that the court had no evidence supporting contempt and discovery sanctions. Instead they argue that the evidence should not have been reviewed. This argument has no merit. The district court, in reconsidering its denial of Smith's motions for renewed contempt and discovery sanctions, did not abuse its discretion. "To have abused its discretion, the court must have come to a conclusion that no other reasonable person would reach." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 956 (7th Cir. 2013). Smith gave the court ample basis to reconsider evidence already of record and evidence newly discovered at or after the November 12, 2014 sanctions hearing. *See* SA11 (finding "that reconsideration is appropriate").

## A.     Evidence on the record supported reconsideration.

Rule 59(e) permits reconsideration of evidence already on the record and arguments previously raised. "[A] motion for reconsideration has to give the tribunal to which it is addressed a reason for changing its mind ... 'perhaps an argument or aspect of the case which was overlooked.'" *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (*quoting In re Cerna*, 20 I. & N. Dec. 399, 402 n.2 (BIA 1991)). A court "may reconsider a prior decision ... when the court misunderstands a party's arguments," *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008), "or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); *accord Dority v. City of Chicago*, 50 Fed. App'x 760, 762 (7th Cir. 2002) (affirming reconsideration after movant "pointed out the [district court's] oversight").

The district court applied that standard. *See* SA9 (*citing Ahmed* and *Ligas*). The order initially denying Smith's motions noted in general terms that "Smith also asserts ... Steele sent a copy of the Court's order staying the contempt order (Doc. 148) to at least one subpoenaed bank in an attempt to foster the mistaken belief that the bank should not comply with the subpoena," AA28, but did not cite to Steele's actual fax to Sabadell, which Smith had placed on record by a supplemental filing to his motion for discovery sanctions. Doc. 158; *see* AA146-148. Smith then properly "brought to the district court's attention the evidence in the record supporting" reconsideration. *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012). He supported his Rule 59(e) motion with previously submitted evidence of "facts ... that were not immediately evident to the Court when it previously considered Smith's motion[s] for contempt and discovery sanctions." SA11. For example, Smith connected the dots between Steele's denial that he advised banks how to interpret the stay order, his actual message to

Sabadell, and his boast to Smith's counsel that he had told banks "the subpoenas must be withdrawn." *See* Doc. 189 p. 5 (citing Doc. 153-1, 158-1 & 188). The motion "shed[] new light" on the discovery obstructions, highlighting evidence already on record of Duffy's "intentionally obstructive" acts with JPMorgan and Steele's "knowing interference in Smith's discovery efforts" with Sabadell. SA13-14 (extensively discussing Steele communication with Sabadell). Smith also supported reconsideration of contempt in part with previously filed evidence "that, in the years leading up to the judgment against him, Hansmeier had transferred nearly half a million dollars to a company called Monyet LLC," SA15 (citing Doc. 172-21), along with new compelling evidence about Monyet. These previously overlooked facts in evidence were properly raised anew and reconsidered.

The attorneys argue that "[t]he district court did not find that it manifestly erred," so reconsideration of Steele's Sabadell obstruction was inappropriate. Br. 28. Rule 59(e) does not require that the district court specify its grounds for reconsideration.[26] *See Grosvenor v. Brienen*, 801 F.2d 944, 945 (7th Cir. 1986) (affirming; "[w]ithout explaining the basis for its decision, the district court granted the plaintiff's motion to reconsider"). "A Rule 59(e) motion should be granted if a manifest error "exists," *Divane*, 194 F.3d at 848, whether or not the error is explained. The district court may reconsider even when it finds no error in its judgment and no reason why evidence that "cast new light" on the judgment was not introduced earlier. *Marlowe v. Bottarelli*, No. 89 C 1789, 1989 U.S. Dist. LEXIS 12077, *8-10 (N.D. Ill. Oct. 6, 1989), *aff'd*, 938 F.2d 807, 810-11 (7th Cir. 1991). Reconsideration requires little explanation when error is

---

[26] *Cf.* Fed. R. Civ. P. 59(d) (requiring, unlike Rule 59(e), specified grounds); *see also Champeau v. Freuhauf Corp.*, 814 F.2d 1271, 1274-75 (8th Cir. 1987) (order under Rule 59(a) for new trial that does not state its grounds may be affirmed if supported on any ground in the motion).

manifest. The district court implicitly found it had erred and rightly gave Smith's evidence and arguments a second look.

## B.    Newly discovered evidence supported reconsideration.

Smith's newly discovered evidence and arguments were properly raised under Rule 59(e) because he showed they were not reasonably available to him earlier. "[T]he moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion[.]" *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996). The groundless motions to quash, combined with the discovery obstructions discussed above, kept relevant financial records out of Smith's hands for most of 2014, past the November 2014 hearing. *See* Doc. 116 (January 30, 2014 motion to quash), 125 (February 19, 2014 order denying motion), 157 (April 22, 2014 motion to quash), & SR32-37 (October 20, 2014 order denying motion). Steele's misrepresentation to Sabadell (AA148) combined with Hansmeier's motion to quash (Doc. 157) to delay Sabadell's production until November 17, 2014, the day before the district court denied Smith's motions, requiring reconsideration. Doc. 193 p. 5 & n.6; AA35.

The attorneys contend that Smith should have earlier obtained the third-party evidence whose disclosure they blocked. That is disingenuous and frivolous. Despite their arguments, Smith showed reasonable diligence in discovering the Monyet documents. *See* Br. 11-14. He subpoenaed TCF Bank in January 2014. *See* Doc. 116-1 p. 14; Doc. 179 p. 5. The district court denied the attorneys' first motion to quash in February. Doc. 116, 125. Smith obtained and reviewed responsive documents from TCF on March 19, 2014. AA56. He learned about Monyet as a result and promptly sought

discovery about Monyet on March 24, 2014, including from ING/Capital One Bank. Doc. 165-5 pp. 47-53. Smith initially surmised, based on annotations on TCF's bank records, that Monyet's accounts would be at ING. Doc. 172 p. 5; 175-20. Smith was left unable to pin down Monyet for another seven months, thanks to Hansmeier's second motion to quash, for which the sole basis was his claim that he had not received service of the subpoenas—an invalid argument for such a motion, *see* SR32, echoing arguments the attorneys had often concocted before. *See* SR36 n.4. After the district court denied Hansmeier's motion to quash, Smith's counsel conferred with TCF about its incomplete discovery responses, which at first failed to include some Monyet documents. AA63-64. He obtained documents concerning Monyet from TCF and Scottrade on February 5 and 20, 2015, respectively. Doc. 197 p. 2. The attorneys' obstructive acts had delayed that discovery past the November 2014 contempt hearing. Their argument that Smith did not shown why the additional documents were not discovered earlier, before the hearing, ignores their role in ensuring discovery was not timely produced and received.

The attorneys misconstrue the standard for finding evidence to be reviewable under Rule 59(e) as newly discovered or previously unavailable. They suggest that since Monyet's existence "was a matter of public record since late 2010," and since Smith relied on Monyet documents that "came into existence months, if not years, prior to the November 12, 2014 hearing," he should have obtained those documents by then. Br. 13. "But this argument reflects a far too simplistic interpretation of availability." *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996) (no abuse of discretion in reconsidering, under Rule 59(e), "bank records [that] were in existence and accessible by the public--and therefore technically available" earlier). Hansmeier disclosed Monyet's existence, and the operational documents were made public as exhibits, in his *Guava* debtor's exam on

37

June 30 and July 2, 2014. The *Guava* transcripts were not even theoretically "public" until September 7 and 14, 2014 (*see* Doc. 190-3 p. 61 & 190-4 p. 36), and Smith was not a party to the *Guava* case in Minnesota. Keeping current with the many fronts of the attorneys' nationwide litigation campaign, *see* Doc. 61 pp. 14-18, and poring over their multifarious financial records, took unusual expense and more than the "reasonable diligence" required to justify newly discovered evidence on reconsideration. *Cincinnati Life Ins. Co.*, 722 F.3d at 955. Reviewing the new Monyet documents was not error.

For Steele and Hansmeier to now argue that Smith should have uncovered their hidden holdings sooner is especially remarkable because they both argued in the district court that Smith had obtained so much discovery that there were no stones left to unturn. Steele contended at the November 12, 2014 hearing, "Counsel has plenty of my bank statements, I know he does, and he's subpoenaed all them, and he knows from looking at them that I don't have that money. Otherwise, Your Honor would be seeing those bank statements, I can assure you. And, of course, I'll -- if any other acquisitions or allegations come up, I would like to approach them." Hr'g Tr. 16:17-23. Hansmeier argued, in his April 22, 2014 motion to quash, that Smith's counsel "cannot plausibly claim that the extraordinarily broad discovery he has already taken was insufficient for him to make his case regarding any of these attorneys' ability to pay" and that "the documents attached to [Smith's] motion suggest that *he obtained the details of every one of Hansmeier's transactions since 2010.*"[27] Doc. 157 p. 9 (emphasis added). Smith

---

[27] This knowing misrepresentation was, Smith noted, an apparent smokescreen. Doc. 165 p. 6. Hansmeier's argument that subpoenas to some banks should be quashed because Smith had received documents from other banks is nonsensical.

had not yet received decisive Monyet documents evidencing Hansmeier's contempt,[28] and due to Hansmeier's motion to quash, Smith did not receive them until after the motion for contempt was decided in favor of the attorneys. There was no error in the district court's reconsidering based on later-produced discovery once Smith obtained it.

The attorneys contend erroneously that "Smith never … provided any indication that necessary discovery was left to be completed." Br. 14 n.3. Smith informed the district court on May 16, 2014 that he had been denied discovery from "key accounts," specifically including Sabadell. Doc. 172 p. 4 ("Smith can only guess at what is still being concealed."). Smith's counsel explained at the November 12, 2014 hearing that discovery was not yet complete. "So for the course of a year almost[,] these discovery requests that we started in January, we still haven't gotten discovery directly from these three attorneys and there are still banks that haven't provided us with the documents that we've requested because of their obstructive efforts." Hr'g Tr. 11:12-17; *see id.* 10:18-11:-8 (due to Steele's obstructive actions, "Sabadell still has not provided us the discovery that we requested back in winter").

The attorneys argue that before November 12, 2014, Smith tactically avoided presenting evidence that he later relied on in support of reconsideration. Br. 13-14 ("Smith's counsel made a strategic decision not to present the documents"). That is false. Smith did not withhold discovery; the attorneys kept it out of his hands. His counsel's time logs defeat the argument, *see* AA52-64, as do his voluminous productions of supporting evidence. The attorneys point to no evidence to support this frivolous

---

[28] Smith also had not yet received documents from Sabadell evidencing Steele's diversion of assets, and from JPMorgan evidencing his role in obstructing discovery there.

argument that evidence was previously available that the district court determined was "newly discovered." SA11, SA14, SA16.

The attorneys ask this Court to substitute its discretion for that of the district court, which they argue got it wrong. *See* Br. 30 ("The district court's conclusion [that Steele's fax to Sabadell obstructed discovery] lacks a basis in law or fact.") Merely reasserting factual and credibility arguments with the district court's decision is a hallmark of a frivolous appeal. *See In re Generes*, 69 F.3d 821, 828 (7th Cir. 1995); *Hinds v. Enhanced Bus. Reporting Consortium, Inc.*, 433 Fed. App'x 463, 466 (7th Cir. 2011). This Court cannot exercise the discretion of the district court. *Amax Coal Co. v. Franklin*, 957 F.2d 355, 357 (7th Cir. 1992). It was neither erroneous nor an abuse of discretion to find them in contempt, find Steele obstructed discovery, and award remedial sanctions.

## CONCLUSION

For all the above reasons, the contempt order and sanctions order should be affirmed.


Dated:  November 30, 2015                Respectfully submitted,

                                         /s/ Dan Booth
                                         Dan Booth
                                         Jason Sweet
                                         Booth Sweet LLP
                                         32R Essex Street
                                         Cambridge, MA 02130
                                         (617) 250-8602

                                         *Attorneys for Appellee Anthony Smith*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed.R. App. P. 32(a)(7)(B) because it contains 12,797 words, excluding the parts of the brief exempted by Fed.R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed.R. App. P. 32(a)(5) and the type style requirements of Fed.R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 14.5.7, in 12-point Georgia.


Dated: November 30, 2015                    /s/ Dan Booth
                                            Dan Booth

                                            *Attorney for Appellee Anthony Smith*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 30, 2015, I electronically filed Anthony Smith's foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Dan Booth
Dan Booth

*Attorney for Appellee Anthony Smith*